## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| FREDRICK O'NEAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| GUIDANT CORPORATION, GUIDANT SALES | ) | |
| CORPORATION, CARDIAC PACEMAKERS, | ) | |
| INC., & BOSTON SCIENTIFIC, INC. | ) | COMPLAINT AND JURY DEMAND |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

NOW COMES Plaintiff, FREDRICK O'NEAL, by and through his attorneys, McCAIN, WEBB & ALEXANDER, P.C., and for his complaint against Defendants, alleges as follows:

1.  Plaintiff is a citizen and resident of Cook County, Illinois.

2.  Defendant Guidant Corporation ("Guidant") is an Indiana Corporation with its principal place of business in Indianapolis, Indiana.

3.  Defendant Guidant Sales Corporation ("Guidant Sales") is an Indiana Corporation with its principal place of business in Indiana.

4.  Defendant Cardiac Pacemakers, Inc. ("Cardiac Pacemakers") is a Minnesota Corporation with its principal place of business in St. Paul, Minnesota.

5.  Defendant Boston Scientific ("Boston Scientific") is an Massachusetts Corporation with its principal place of business in Minnesota.

6.  Guidant, Guidant Sales, Cardiac Pacemakers and Boston Scientific all are engaged, or have been engaged in the testing, manufacturing, licensing, marketing, selling, promoting and distributing, either directly or indirectly through third parties, of implantable cardioverter

defibrillators ("ICDs") and/or pacemakers through worldwide trade or commerce and interstate commerce in the  United States.

## JURISDICTION AND VENUE

7.   Plaintiff alleges an amount in controversy in excess of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

8.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000) for Plaintiff and because there is complete diversity of citizenship between Plaintiff and Defendants.

9.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(a).  At least one of the Defendants maintains or maintained a principal place of business in this District, the Guidant devices at issue were developed in this District, and a substantial part of the events giving rise to the claims arose in this District.

## COUNT I

## NEGLIGENCE AGAINST ALL DEFENDANTS

10. Plaintiff suffers from a condition known as dialated cardiomyopathy (enlargement of the heart).  On or about May 24, 2004, Plaintiff was implanted with the following:

   a.   Guidant Ventak Prism defibrillator, MODEL 1852, serial  number 204870 for cardiac arrhythmias (the "ICD"); and

   b.   Guidant lead, MODEL 1058, serial number 137711.

The device was implanted at Christ Hospital in Oak Lawn, Illinois by Dr. Pierre Abi-Mansour.

11. On or about May 8, 2007, Plaintiff received a shock to his heart from the implant on

two occasions.  He was transported via ambulance to Illinois Masonic Hospital in Chicago,

Illinois.  The pacemaker technician who treated Plaintiff reported that Plaintiff did not suffer

from an arrthymia.

12. On or about May 11, 2007, Plaintiff received three to four shocks to his heart from

the implant.  He was transported via ambulance to Christ Hospital in Oak Lawn, Illinois, where

the device was disabled.

13. On or about May 15, 2007, Defendants' device was explanted from Plaintiff's body

and replaced at Christ Hospital in Oak Lawn, Illinois by Dr. Manoj Duggal.

14. On or about January 31, 2008, Plaintiff received a pre-paid postcard from

Defendants requesting information from Plaintiff about the originally implanted device.  The

postcard further instructed Plaintiff to provide a reply, via mail as to whether or not the originally

implanted device was still in Plaintiff's body.  He replied "no" and mailed the postcard back to

Defendants.

15. Defendants' failure to warn Plaintiff or his implanting physician of the potential that

the originally implanted ICD and its components could malfunction and short circuit.  Had

Plaintiff known of that risk, he would have elected to have a different ICD implanted.

## COUNT II

## STRICT LIABILITY

16. All of the allegations contained in Count I are realleged and incorporated herein by

reference.

17. Defendants were at all relevant times engaged in designing, developing, testing,

inspecting, promoting, advertising, manufacturing, and/or distributing ICDs, which they sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff.

18. While Defendants were engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs, Defendants sold the ICDs to other healthcare providers for use by and resale to patients, including Plaintiff.

19. The subject ICD implanted in Plaintiff was in the same form and condition in which it existed when Defendants sold and/or provided and delivered the ICD for distribution to various healthcare providers.

20. Defendants expected the ICD to reach consumers, including Plaintiff, in the condition in which they sold them.

21. Said product was defective when placed on the market by Defendants.  A reasonable seller would not have sold the product had he/she known of the risks involved.  The risks were greater than a reasonable buyer would expect.

22. Said product was defective and unreasonably dangerous when put to its intended use. The device was not manufactured to conform to the product specifications submitted by Defendants to the FDA.  The design of the device was defective because of the fact that it could short circuit.

23. As a result of Defendants' marketing and promotion of said defective and unreasonably dangerous product, Plaintiff was implanted with said defective device and has suffered injury, loss and damages as aforesaid.

24. By reason of having marketed and promoted ICDs in their defective and unreasonably

dangerous condition, Defendants are strictly liable to the Plaintiff for the ICD related injuries, losses and damages of Plaintiff.

## COUNT III

## BREACH OF WARRANTY

25.   All of the allegations contained in Counts I and II are realleged and incorporated herein by reference.

26. At all times relevant to this action, Defendants marketed and promoted ICDs accompanied by implied and express warranties and representations to physicians and their patients that the device was efficacious to treat dialated cardiomyopathy as directed for such purposes.

27. Defendants knew, or should have known, that patients, including the Plaintiff and his attending physicians, were relying on Defendants' skills and judgments, and the implied and express warranties and representations.

28. At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

29. As a direct result of the breach of warranties by Defendants, the Plaintiff has been injured as aforesaid.

## COUNT IV

## MISREPRESENTATION

30. All of the allegations contained in Counts I, II, and III are realleged and incorporated herein by reference.

31. Defendants represented to patients, including the Plaintiff and his attending

physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

32. The Plaintiff and his attending physicians did, in fact, rely on Defendants' representation in their advice about purchase, use and implantation of the subject ICD.

33. At all times relevant to this action, these representations were known to Defendants to be false or they were made by Defendants in conscious, reckless and/or unreasonable disregard of facts available to Defendants, indicating a lack of efficacy and a danger to patients.

34. As a direct result of said false representations by Defendants, the Plaintiff was injured as aforesaid.

**COUNT V**

**PUNITIVE DAMAGES**

35. The acts of the Defendants were gross, wanton and intentional in that Defendants, at the time of the Plaintiff's original implant, had actual and constructive notice that the subject ICD was defective.  Additionally, the Defendants knew or should have known that the subject ICD was ineffective, of no use and provided no benefit to the patient.  Nonetheless, the Defendants knowingly and intentionally promoted the subject ICD as safe and effective to treat cardiac arrhythmias, including but not limited to dialated cardiomyopathy, disregarding the adverse reports that demonstrated the defective nature of the subject ICD.  Additionally, the Defendants fraudulently deceived the Food and Drug Administration, the cardiology profession and the Plaintiff by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff FREDERICK O'NEAL demands judgment against

Defendants, jointly and severally, in a sum in excess of $75,000 as compensatory and punitive

damages, plus costs, prejudgment interest and for such other and further relief as this Court may

deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.


DATED:  December 26, 2009

Respectfully Submitted,

/s/ Monica L. Lowe Webb
Monica L. Lowe Webb
McCain, Webb & Alexander, P.C.
4655 South Dr. Martin Luther King Jr., Drive, Suite 105
Chicago, IL 60653
773.373.8700 (p)
773.373.8701 (f)
mlowewebb@mwalawgroup.com
ARDC No. 6281954